*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 14, 2020

Plaintiff-Appellee,

V

No. 345792
Wayne Circuit Court
LC No. 18-003417-01-FC

FELIX ANTONIO DAVIS III,

Defendant-Appellant.

Before: JANSEN, P.J., and METER and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (sexual penetration with aggravating circumstances); one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c (sexual contact with aggravating circumstances); one count of assault with intent to do great bodily harm less than murder, MCL 750.84; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 60 to 100 years' imprisonment for the CSC-I convictions, 5 to 20 years' imprisonment for the CSC-II conviction, 3 to 10 years' imprisonment for the assault conviction, one to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND

Defendant found the victim's profile on a social media website and contacted her. Defendant and the victim agreed to "chill" and smoke marijuana together. Defendant picked up the victim and drove her to his home. When the victim first arrived, she was not feeling well, so she took a nap. When she woke up, defendant asked if he could pay her for sex. The victim declined. Defendant then raped the victim three times. He also punched her in the face, pulled out her weave, and temporarily locked her in the basement. The victim escaped after defendant left her alone when he went to answer the door. The victim ran to a gas station, and individuals

there called the police. Four months after the incident, the police found and arrested defendant. Defendant was then charged, convicted, and sentenced. This appeal follows.

## II. DISCUSSION

On appeal, defendant challenges the scoring of offense variables (OVs) 7 and 10, whether defense counsel provided effective assistance of counsel, and the admission of various pieces of evidence. We disagree.

### A. OV 7

Defendant first argues that the trial court improperly assessed 50 points for OV 7 because defendant's conduct did not amount to torture, sadism, or excessive brutality.[1] We disagree.

"Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance for the evidence." *Id.*

"The focus of OV 7 is defendant's conduct and purpose with respect to aggravated physical abuse." *People v Kegler*, 268 Mich App 187, 191; 706 NW2d 744 (2005). See also MCL 777.37(1). Trial courts assign 50 points for OV 7 if the "defendant's conduct [fell] under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440. Accordingly, 50 points must be assigned if the defendant treated the victim with sadism, torture, excessive brutality, or "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "[S]imilarly egregious conduct designed to substantially increase the fear and anxiety of a victim suffered during the offense" means conduct "that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 440-441. When considering whether a defendant's conduct qualified as similarly egregious conduct, trial courts should inquire "(1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id.* at 443-444.

Here, the record supports the trial court's finding that defendant engaged in conduct that was designed to substantially increase the victim's fear and anxiety by engaging in conduct beyond what was necessary to commit CSC-I. The jury found that defendant sexually penetrated the victim by force or coercion, the victim sustained personal injury, and there were aggravating circumstances involving the crimes of both assault by strangulation and felon-in-possession. MCL 750.520b(1)(c), (e), and (f). Additionally, the victim testified that defendant punched her in the

---

[1] Defendant recognizes that a reduction of 50 points would not change his minimum sentencing guidelines. However, he requests that this Court remand his case so that the trial court may correct his presentence investigation report (PSIR). See *People v Bailey*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 342175); slip op at 9, n 2.

face, slammed her against a wall, and pulled out her weave. The victim also testified that defendant refused to let her leave his house and chased her around. Finally, defendant dragged the victim into the basement, and locked her in there for about 30 minutes or an hour in the dark.

Therefore, there was a preponderance of the evidence that defendant's conduct was beyond the minimum necessary to commit the offense of CSC-I, and the conduct was intended to increase the victim's fear or anxiety. Thus, the trial court correctly assessed 50 points for OV 7.

## B. OV 10

Next, defendant argues that the trial court improperly assigned 10 points for OV 10.[2] We disagree.

OV 10 addresses the exploitation of a vulnerable victim. MCL 777.40. Trial courts must assign 10 points for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). The record must additionally establish that the defendant exploited the victim's vulnerability. *People v Cannon*, 481 Mich 152, 159; 749 NW2d 547 (2008). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

The record supports the trial court's finding that the victim's vulnerability of youth was exploited. When defendant raped the victim, he was 40 years old, and she was 20 years old. Because of the age gap, the victim's youth was a vulnerability. Additionally, defendant exploited the victim's vulnerability. At trial, the victim testified that she only discussed "chilling" and smoking marijuana with defendant before he picked her up. She did not tell defendant that she was willing to have sex with defendant. The victim had never met defendant, but she was willing to go to a house alone with him to smoke marijuana, which indicates a youthful naivete that defendant exploited to isolate the victim. See *People v Lampe*, 327 Mich App 104, 116; 933 NW2d 314 (2019). Additionally, defendant continued this façade that he only wanted to smoke marijuana with the victim up until he raped her. Until defendant raped the victim, he showed kindness to the victim by buying her a Vernors and chicken noodle soup. Additionally, he allowed the victim to take a nap when she first got to his house. Therefore, the trial court did not err by assessing 10 points for OV 10.

---

[2] Although a reduction of 10 OV points would not alter defendant's minimum sentencing guidelines, defendant requests that this Court remand this case to the trial court so that the trial court may correct defendant's PSIR. See *Bailey*, ___ Mich at ___; slip op at 9, n 2.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied his right to effective assistance of counsel. We disagree.

This Court's determination "[w]hether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error a trial court's findings of fact and de novo questions of constitutional law. *Id*. However, because defendant's motion for a new trial or evidentiary hearing was denied, "our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

The defendant has the burden of establishing that he was denied effective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must establish "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). The defendant must show that defense counsel's actions were not a "result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Additionally, this Court should not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

For the second requirement, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 192 (2010). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). A defense counsel's failure to present evidence or call witnesses at trial can constitute ineffective assistance of counsel if the defendant is deprived of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013); *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant first contends that he was denied effective assistance of counsel because defense counsel failed to provide him with the discovery. However, defendant failed to provide this Court with any evidence that defense counsel did not provide him discovery. The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel . . . ." *Hoag*, 460 Mich at 6. Instead, defendant only cites the pretrial hearing and jury trial transcripts. Those transcripts only provide this Court with the many accusations that defendant made against defense counsel regarding discovery. There is no support, outside of defendant's own statements, for the contention that defense counsel withheld discovery from defendant. Therefore, defendant has failed to prove that defense counsel's performance was objectively deficient.

Additionally, defendant fails to provide any argument regarding prejudice. That is, defendant fails to "explain what he actually would have done differently, either before or at trial, if he had received any discovery materials . . . ." *People v Jackson*, 292 Mich App 583, 601; 808 NW2d 541 (2011). Therefore, even assuming that defense counsel's performance was objectively deficient, defendant has failed to prove that he was prejudiced.

Defendant also contends that he was denied effective assistance of counsel because defense counsel failed to admit evidence at trial regarding whose fingerprints were on the gun found in defendant's home. This argument is also without merit.

Once again, defendant failed to provide this Court with any support for his claim. *Hoag*, 460 Mich at 6. The record does not establish that the police ever tested the handgun for fingerprints. Additionally, defendant failed to provide this Court with any proof that his fingerprints were not found on the handgun. Furthermore, defense counsel's decision not to pursue a fingerprint analysis may have been sound trial strategy because the analysis may have revealed that defendant's fingerprints were on gun, which would have hurt defendant's case. However, even assuming defense counsel was able to test the gun for fingerprints, and the results proved that defendant's fingerprints were not on the gun, defendant failed to prove that it was "reasonably probable" that the jury's verdict would have changed. *Armstrong*, 490 Mich at 290. Thus, defendant's argument is "purely speculative." *Hoag*, 460 Mich at 8. Defendant failed to present this Court with any evidence or legal analysis that "defendant would have fared any better at trial with this information." *Id*. Accordingly, defendant failed to establish that defense counsel provided ineffective assistance of counsel.

## D. EVIDENTIARY CHALLENGES

Defendant asserts that the trial court made several errors regarding the admission of evidence. First, defendant argues that the trial court erred by admitting other-acts evidence because the prejudicial effect of the evidence substantially outweighed any probative value. Second, defendant similarly argues that the trial court erroneously admitted letters that defendant wrote because the prejudicial effect substantially outweighed the probative value. Third, defendant challenges the admission of photographs of defendant's firearm, arguing that the prejudicial effect of the photographs outweighed any probative value. We disagree.

This Court reviews for an abuse of discretion the trial court's admission of other-acts evidence at trial. *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). A trial court "abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. at 670.

"Generally, Michigan's Rules of Evidence proscribe the use of character evidence to prove action in conformity therewith." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). Indeed, MRE 404(b) generally excludes the use of other-acts evidence "to avoid the danger of conviction based on a defendant's history of misconduct." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). However, evidence of a defendant's other acts may be admissible under certain circumstances:

Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

To be admissible under MRE 404(b), the evidence must (1) be offered for a proper purpose, (2) be relevant to an issue of fact, and (3) not have a probative value that is substantially outweighed by the danger of unfair prejudice. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "A proper purpose for admission is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *Johnigan*, 265 Mich App at 465.

Under the third prong, prejudicial evidence is not necessarily excluded; only evidence that is unfairly prejudicial is excluded. MRE 403; *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. The concern is that the jury "will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again." *Id*. (quotation marks and citation omitted).

## 1. OTHER-ACTS EVIDENCE

Defendant first challenges the trial court's admission of testimony concerning defendant's 2009 conviction for the statutory rape of MG. At trial, MG testified that in 2008, when she was a minor, she lived with defendant. At that time, defendant was a pimp, and would use other minor children who lived with him as prostitutes. Although defendant used MG as a police lookout instead of a prostitute, MG described a sexual encounter with defendant. MG told defendant to stop, but defendant refused and continued to have sex with MG. MG also testified to an instance where defendant physically assaulted her after MG spent the night at another man's home. When MG returned to defendant's home, defendant ran outside with a gun and yelled at the man. Defendant locked MG out of the house, but MG was able to find a way inside. Later that night, defendant smacked MG, locked her in a closet for an unknown length of time, and pulled MG's hair. MG also testified that she had seen defendant with a gun on other occasions.

The trial court properly admitted MG's testimony at trial for the proper purpose of proving a common scheme or plan. MG's testimony was "logically relevant to show that the charged act occurred" because the bad acts in 2008 and "the charged offense are sufficiently similar to support an inference that they are manifestations of a common, plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). The prior incident showed that defendant had a common scheme or plan when he committed criminal sexual conduct. In both cases, defendant targeted young women who were vulnerable. MG was a minor, and in this case, the victim was only 20 years old. Defendant was significantly older than the victims. Additionally, in both cases, defendant took them to his home and cared for their needs. He provided MG shelter, and he provided the victim in this case with a drink and chicken noodle soup after she stated that she was not feeling well. Additionally, he allowed the victim to sleep on his bed for hours when

she first arrived at his house. Further, defendant physically assaulted the women the same way: both victims reported that defendant pulled their hair and locked them in a confined space. Both victims were also aware that defendant possessed a gun. Therefore, evidence of the 2008 incident was relevant because it showed that defendant had a common scheme or plan for physical and sexual assaults, and it was logically relevant to proving that defendant committed the offenses of which he was charged.

Furthermore, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice because it helped establish that defendant had a common scheme or plan for physical and sexual assault. Additionally, the trial court provided a limiting instruction to the jury regarding the other-acts evidence to protect defendant from unfair prejudice. See *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002) ("A carefully constructed limiting instruction rendered by the trial court would be sufficient to counterbalance any potential for prejudice spawned by the other acts evidence."). Therefore, the trial court did not abuse its discretion because the other-acts evidence was admitted for the proper purpose of proving a common scheme or plan, the evidence was relevant, and the probative value was not substantially outweighed by unfair prejudice.

## 2. DEFENDANT'S LETTERS

Defendant next challenges the trial court's admission of letters that defendant wrote to MG and Kandi Martin. At trial, MG testified that defendant sent her a letter asking MG to recant statements that she made in 2008 about defendant. Martin, defendant's ex-girlfriend, testified that defendant contacted her through letters and telephone calls from jail and requested that Martin contact the victim in this case and offer her money to not testify at trial. Defendant's letters to MG and Martin were admitted as exhibits at trial.

The trial court determined that defendant's letters were admissible because they showed defendant's consciousness of guilt. "Evidence that a defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt." *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). The letters were relevant because they were clearly intended to prevent the prosecution from prosecuting defendant, and were probative of defendant's consciousness of guilt. Additionally, there is no indication that the jury gave the letters any undue or preemptive weight. Therefore, the trial court properly admitted the letters into evidence at trial.

## 3. PHOTOGRAPHS OF GUNS

Defendant next argues that the trial court erred by admitting photographs of guns that were found on defendant's cellular telephone. We disagree.

"Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996) (quotation marks and citation omitted). Whether rebuttal evidence "is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross." *Id*. The Michigan Supreme Court determined that "the test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly

responsive to evidence introduced or a theory developed by the defendant." *Id*. "As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief." *Id*. Rebuttal evidence must be "relate[d] to a substantive rather than a collective matter." *People v Humphreys*, 221 Mich App 443, 446; 561 NW2d 868 (1997).

Before trial, the prosecution sought to introduce pictures found on defendant's telephone of various guns as other-acts evidence because they were relevant to defendant's felony-firearm and felon-in-possession charge. The trial court denied the prosecution's request and held that the evidence was unfairly prejudicial under MRE 403. However, at trial, defendant stated on direct examination that the prosecution's "narrative" that he was a "gun toting rapist" was false. Defendant also stated that he "[had] never, ever been charged with a pistol, a gun case," and that he had "never ever committed a crime where a gun was associated with the case." On cross-examination, the prosecution asked defendant about his ability to own guns as a felon and whether he owned any guns. Defendant answered that he was not able to buy guns and that he did not own any guns. The prosecution then asked defendant whether he had any pictures of guns on his cellular telephone, and defendant admitted that he did. However, he claimed that the person who owned his cell phone before him took the photographs.

The trial court recognized that it had previously denied the prosecution's request to introduce the photographs as other-acts evidence, but stated that the photographs were admissible for the purposes of rebuttal because defendant denied owning any guns. Detective James Audi then testified that he found one picture of an AR-15 rifle, one picture of a revolver pistol, and two pictures of a black, semiautomatic handgun on defendant's cellular telephone. Detective Audi also testified that the metadata of the photographs established that the photographs were taken days before defendant met the victim.

Defendant now argues that the photographs of the guns were improperly admitted as other-acts evidence, and requests that this Court perform the MRE 404(b) analysis and determine that the trial court should have excluded the photographs. Defendant supports his argument by highlighting the trial court's MRE 404(b) limiting instruction. Although the trial court first concluded that the photographs of the guns were inadmissible and held that the unfair prejudice of the photographs outweighed their probative value, the trial court later admitted the photographs as rebuttal evidence because of the statements that defendant made at trial. Because the photographs were introduced as rebuttal evidence, not other-acts evidence, we do not need to perform the MRE 404(b) analysis. Regarding defendant's argument involving the trial court's limiting instruction, a review of the instruction does not indicate that the trial court issued the instruction for any evidence other than the evidence of the 2008 incident discussed above. Therefore, we deny defendant's request and analyze the photographs as rebuttal evidence, not as other-acts evidence.

Defendant's statement that he did not own any guns advanced his theory at trial that the gun found at his house belonged to the victim and not him. Defendant testified at trial that the victim brought the gun over his house and placed it in the bedroom, which supported defendant's argument that he was not guilty of some of the charges. However, the photographs of the guns directly rebutted defendant's testimony that he did not own any guns, and therefore, the photographs were properly admitted as rebuttal evidence. See *Figgures*, 451 Mich at 399.

Defendant also argues that the prejudicial effect of the photographs outweighed their probative value. The trial court initially determined that the photographs were inadmissible under MRE 403 because the probative value of the photographs was substantially outweighed by the risk that the jury would find that defendant "had a propensity for being in the presence of firearms." However, after the prosecution requested that the admission of photographs as rebuttal evidence, the MRE 403 analysis changed. The trial court properly determined that the probative value of the evidence was no longer substantially outweighed by the risk of unfair prejudice. Although the evidence remained prejudicial, it became extremely probative because it directly contradicted defendant's statements that he did not own any guns and that the prior owner of the cellular telephone took the photographs. Therefore, the trial court properly concluded that photographs of the guns were admissible at trial.

Affirmed.


/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Thomas C. Cameron