PEOPLE v KEGLER

Docket No. 255637. Submitted August 30, 2005, at Lansing. Decided
    September 15, 2005, at 9:00 a.m. Leave to appeal sought.
    Terese Kegler was convicted by a jury in the Wayne Circuit Court of
        second-degree murder. The court, Prentis Edwards, J., sentenced her
        to 15 to 25 years in prison, having considered under the sentencing
        guidelines a score of 50 points for offense variable (OV) 7, the
        treatment of a victim with sadism, torture, or excessive brutality or
        conduct designed to substantially increase the fear and anxiety a
        victim suffered during the offense. MCL 777.37(1)(a). The defendant
        appealed to challenge the scoring of OV 7, arguing that her boyfriend
        strangled the victim and carried him to the trunk of the defendant's
        car and that the victim was unconscious or dead throughout the
        ordeal.

    The Court of Appeals *held*:

    The circuit court correctly scored OV 7 at 50 points. There is
    record evidence that the victim may not have been unconscious or
    dead throughout his ordeal. Also, OV 7 focuses on the conduct of the
    defendant, not on any suffering, fear, or anxiety imposed on the
    victim by the defendant. Although the victim may not have been
    aware of his treatment by the defendant and her boyfriend, it would
    be contrary to the plain meaning of OV 7 to conclude that there is less
    culpability for aggravated physical abuse simply because the victim
    lost consciousness earlier than the defendant presumed.

    Affirmed.

    COOPER, P.J., dissenting, stated that OV 7 is scored at 50 points
    when a victim was treated with sadism, torture, or excessive
    brutality or conduct designed to substantially increase the fear
    and anxiety the victim suffered during the offense. A victim must
    be alive and conscious to have fear and anxiety, to be subjected to
    pain and humiliation, or to suffer. The trial court incorrectly
    scored OV 7 given the evidence that the victim was unconscious or
    dead when his body was left outside and placed in the trunk of a
    car. The case should be remanded for a resentencing.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *Kym L. Worthy*, Prosecuting Attor-

ney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Valerie M. Steer*, Assistant Prosecuting Attorney, for the people.

*Law Offices of Deborah A. Choly* (by *Deborah A. Choly*) for the defendant.

Before: COOPER, P.J., and BANDSTRA and KELLY, JJ.

BANDSTRA, J. Defendant Terese Kegler appeals as of right her conviction of second-degree murder[1] arising from the death of Gary Wayne Wilson. Defendant was sentenced to 15 to 25 years in prison. We affirm.

### I. FACTUAL BACKGROUND

On the night of December 31, 2003, defendant and Wilson smoked crack cocaine together for several hours at defendant's home. Defendant's boyfriend, Gregory Brantley,[2] returned home. Subsequently, he left with Wilson to purchase $100 of crack cocaine and marijuana with money supplied by defendant. Brantley suspected that Wilson stole $60 during this transaction. An argument ensued and defendant punched Wilson.[3] Brantley intervened to protect defendant, and the two men began to fight. At one point, Wilson pulled a screwdriver from his pocket. Defendant then threatened Wilson with a butcher knife.[4] Brantley squeezed Wilson's neck and continued to punch Wilson while defendant

---

[1] MCL 750.317.

[2] Brantley was also charged, and he pleaded guilty of second-degree murder before trial.

[3] Brantley testified that Wilson was attempting to leave and that defendant punched him as he pushed past her. Defendant denies that Wilson was attempting to leave.

[4] Brantley testified that defendant actually poked Wilson in the leg with the knife, but not hard enough to puncture the skin.

checked his pockets for the missing money. When Wilson lost consciousness, defendant removed his clothing and eventually found drugs and money in his pants.

Believing Wilson to be alive, defendant and Brantley carried an unclothed Wilson outside. Defendant later told police that they intended to humiliate Wilson. Defendant rethought this plan and placed Wilson's clothes on top of his body. Brantley moved Wilson's body to the back of the yard, but as the sun began to rise, defendant became afraid that the neighbors would see Wilson's body. Still believing Wilson to be alive, Brantley moved Wilson's body into the trunk of defendant's car.[5] Defendant and Brantley continued to use drugs throughout the day of January 1. On the advice of her brother, defendant turned herself into the police the next day. Wilson's body was recovered that afternoon. The medical examiner testified that Wilson died of asphyxia by manual strangulation. Wilson likely lost consciousness within 90 seconds and died within three to five minutes. However, the medical examiner could not exclude hypothermia as a contributing factor to Wilson's death.

## II. OV 7

Defendant's only argument on appeal is that the trial court improperly scored offense variable (OV) 7, aggravated physical abuse, and, therefore, her sentence was an improper upward departure from the minimum sentencing guidelines range. We must affirm a sentence falling within the appropriate sentencing guidelines

---

[5] Defendant testified that she did not help place Wilson's body in the trunk; however, Brantley testified that defendant helped him push Wilson's feet into the trunk. Defendant was also impeached when she testified that it was Brantley's idea to place Wilson's body in the trunk. Her statement to the police indicated that it was her idea.

range "unless the trial court erred in scoring the guidelines or relied on inaccurate information in determining the defendant's sentence."[6] "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score."[7] A scoring decision will be upheld if there is any evidence to support it.[8] However, we review de novo any legal questions involving the interpretation or application of the statutory sentencing guidelines.[9]

Second-degree murder is a crime against a person[10] for which OV 7 is to be scored.[11] OV 7 may be scored 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[12] "Sadism" is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."[13]

Defendant first contends that the trial court improperly assigned 50 points for OV 7, as Brantley was the individual who actually strangled Wilson, carried his naked body outside, and placed the body in the trunk. However, defendant did remove Wilson's clothing and admitted to the police that she wanted to humiliate him by leaving him naked outside. There is also record

---

[6] *People v Babcock*, 469 Mich 247, 261; 666 NW2d 231 (2003), citing MCL 769.34(10).

[7] *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

[8] *Id.*

[9] *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

[10] MCL 777.16p.

[11] MCL 777.22(1).

[12] MCL 777.37(1)(a).

[13] MCL 777.37(3).

evidence that the placing of Wilson in her trunk was also defendant's idea and that she assisted in completing this act.

Defendant also argues that OV 7 applies only when a victim actually experiences aggravated physical abuse and, therefore, that points may not be assessed because Wilson was unconscious or dead throughout the ordeal. We disagree, first, because the record contains evidence that Wilson may not have died or lost consciousness before the aggravated physical abuse occurred. Defendant admitted that she thought she felt a pulse after Wilson had been placed outside for some time, naked and in the cold, and that she heard grunting noises later, when he was being transferred into the trunk. Thus, there was sufficient evidence to support the scoring.

Second, we disagree with the premise of defendant's argument. The focus of OV 7 is defendant's conduct and purpose with respect to aggravated physical abuse. Points are assessed where "a victim *was treated with* . . . torture, or excessive brutality or conduct designed to increase" a victim's fear and anxiety.[14] The statute does not require, for instance, that "a victim *experienced* . . . torture, or excessive brutality or conduct designed to increase" fear and anxiety. Even if Wilson was not, in fact, aware of what was being done to him, there was evidence that defendant at least thought he might have some consciousness and intentionally tortured him with excessive brutality that was meant to increase his fear and anxiety. It would be contrary to the plain

---

[14] MCL 777.37(1)(a) (emphasis added). We recognize that points can also be assessed for sadism, defined as conduct that "subjects a victim" to pain or humiliation. MCL 777.37(1)(a), (3). While this might suggest that the victim's experience as well as the defendant's conduct must be considered in cases where a scoring is based only on sadism, that is not the case here.

meaning of OV 7 to conclude that there is less culpability for aggravated physical abuse simply because the victim lost consciousness earlier in the course of events than defendant presumed.

We affirm.

KELLY, J., concurred.

COOPER, P.J. (*dissenting*). I must respectfully dissent from the majority opinion of my colleagues. I would find that the trial court improperly assessed 50 points for offense variable (OV) 7, aggravated physical abuse.

Pursuant to MCL 777.37(1)(a), OV 7 is scored at 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[1] Defendant's conduct was appalling and callous. However, I do not agree that it amounted to torture or excessive brutality, as opposed to the conduct of her codefendant.[2] The statute specifically defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."[3] Accepting the literal language of the

---

[1] MCL 777.37(1)(a).

[2] See *People v Wilson*, 265 Mich App 386, 398; 695 NW2d 351 (2005) (finding a score of 50 points appropriate where "[t]he victim's testimony detailed a brutal attack, which took place over several hours, involving being attacked by weapons and being kicked, punched, slapped, and choked numerous times, ending in injuries requiring treatment in a hospital," followed by a lengthy recovery period); *People v Hornsby*, 251 Mich App 468, 469; 650 NW2d 700 (2002) (finding "terrorism" where the defendant held a shift supervisor at gunpoint while he cocked the gun and repeatedly threatened the lives of the supervisor and her employees).

[3] MCL 777.37(3). Defendant stated that her intent in placing Mr. Wilson's body outside was to humiliate him. However, there is no indication that she experienced any gratification from this behavior. The

statute and the definition it provides, as mandated by the Michigan Supreme Court,[4] a victim must actually experience pain or humiliation in order to have been treated with sadism.

A victim must be alive and conscious to have fear and anxiety, to be subjected to pain or humiliation, or to suffer. The evidence clearly shows that Mr. Wilson was unconscious and, undoubtedly, already dead when defendant and Mr. Brantley left his body outside and when they placed him in defendant's trunk. The medical examiner testified that Mr. Wilson would have lost consciousness within 90 seconds of being strangled and would have died within three to five minutes. Defendant was uncertain whether she felt Mr. Wilson's pulse when she and Mr. Brantley placed his body outside, or whether she heard Mr. Wilson grunt when they placed his body in her trunk. However, defendant definitively asserted that Mr. Wilson never regained consciousness. Therefore, I would find that the trial court could not properly base defendant's score on these acts.

Reducing defendant's offense variable score by 50 points would place her at offense variable level I. The recommended minimum sentencing range for a defendant in offense variable level I and prior record variable level A is 7½ to 12½ years.[5] As defendant's minimum sentence of 15 years would exceed the corrected sentencing range, I would remand for resentencing.[6]

---

gratification referenced in this statute comes from watching someone suffer. However, a corpse no longer suffers. Obviously, there is a prohibition against desecrating a dead body in this state, MCL 750.160, but that behavior is not of the type contemplated under this particular statute.

[4] *Elezovic v Ford Motor Co*, 472 Mich 408, 419 n 16; 697 NW2d 851 (2005); *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[5] MCL 777.61.

[6] MCL 769.34(3); *People v Babcock*, 469 Mich 247, 256-257; 666 NW2d 231 (2003).