# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 8, 2016

Plaintiff-Appellee,

v

No. 328373
Wayne Circuit Court

TYLER PAUL MCCREARY,

LC No. 13-008488-01-FC

Defendant-Appellant.

Before: WILDER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his sentence on jury convictions of second-degree murder, MCL 750.317, and felony murder, MCL 750.316(1)(b). He argues that offense variables (OVs) 5, 7, 8, and 10 were improperly scored and that the trial court impermissibly used judicial fact-finding to score these variables. We agree in part, and remand for proceedings consistent with this opinion.

## I. FACTS

On August 26, 2013, defendant was drinking with Michael Tulacz, John Niemiec, his grandfather, and another man. At some point, Niemiec and Tulacz went outside onto the front porch and began arguing, and Tulacz hit Niemiec in the back of the head with a beer bottle. Niemiec then fell off the porch, hitting his face on concrete, and apparently did not move. Tulacz then kicked Niemiec in the head and then "smashe[d]" at least three beer bottles over his head. Defendant then kicked Niemiec five to six times between the knee and shoulder. Tulacz continued to kick Niemiec, then hit him with a chair multiple times, and then kicked him again. A witness testified that later in the night, sometime after 2:00 a.m., Tulacz and defendant moved Niemiec "[t]o the side of the house . . . in between the houses." A neighbor saw the body, which was "[o]n the west side of the house on a walkway that leads to the backyard" between two houses, the next morning and someone called the police. By the time the police arrived, medical personnel had already determined that Niemiec was deceased.

The medical examiner explained that Niemiec suffered many external injuries, including "multiple blunt force trauma[s]," on his head, face, chest, abdomen, back, upper extremities, and lower limbs; multiple abrasions and contusions on his face, the top of his head, his back, and his right forearm; contusions on his abdomen, chest, and legs; contusions and lacerations on the back

-1-

of both hands; and lacerations on his head. The internal injuries included a hemorrhage on the scalp, which led to bleeding on the surface of the brain, bleeding into the brain, fractures on the right and left side of the ribs, a hemorrhage in the intestine, and a laceration of the left kidney. The medical examiner did not see any postmortem injuries. He concluded that the cause of death was multiple blunt force injuries, that the head injuries and the kidney laceration were both fatal, and that because they were inflicted so close in time, he "could not separate" the fatal injuries.

## II. ANALYSIS

### A. OV SCORING

Defendant first argues that the trial court incorrectly scored OVs 5, 7, 8, and 10 and that resentencing is required because he has a due process right to be sentenced using accurate information and these combined errors raised his minimum guidelines sentence range. We disagree.

Defendant preserved these challenges by objecting to the scoring of OVs 7 and 8 at sentencing and by objecting to the scoring of OVs 5 and 10 in a motion to remand filed in this Court. See MCR 6.429(C). We review a trial court's factual findings underlying its OV scoring for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo whether those facts support the OV scoring, *id.*, and any constitutional issue, *People v Hill*, 257 Mich App 126, 149-150; 667 NW2d 78 (2003).

Defendants have a due process right to be "sentence[d] . . . upon accurate information." *People v Robinson*, 147 Mich App 509, 510; 382 NW2d 809 (1985). Remand for resentencing is required if a defendant is sentenced within a minimum guidelines sentence range calculated as the result of "a scoring error or inaccurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). But if "a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Id.* at 89 n 8. A trial court's factual findings in support of its scoring of the sentencing guidelines must be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438.

OV 7 governs "aggravated physical abuse." MCL 777.37(1). Four separate courses of conduct can justify a score of 50 points. *Hardy*, 494 Mich at 439-440. The defendant can either treat the victim with (a) sadism, (b) torture, (c) excessive brutality, or (d) "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). To determine whether one of these scenarios occurred, we focus on defendant's conduct only. *People v Hunt*, 290 Mich App 317, 325-326; 810 NW2d 588 (2010). We do not focus on others' conduct toward the victim, *id.*, or the victim's experience of defendant's conduct. *People v Kegler*, 268 Mich App 187, 191-192; 706 NW2d 744 (2005).

The trial court assigned 50 points to OV 7 partially because defendant "participated in the beating."[1] Defendant kicked the victim five or six times "between the knee and shoulder" after the victim had been hit by Tulacz, fell from the porch, and stopped moving. Accordingly, defendant's conduct could have caused some or all of the external injuries to the victim's chest, abdomen, back, upper extremities, and lower limbs, as well as the rib fractures, intestine hemorrhage, and kidney laceration. This Court has defined "torture" as " 'the act of inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty.' " *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), overruled on other grounds in *Hardy*, 494 Mich at 432, quoting *Random House Webster's College Dictionary* (1997). Kicking the victim five to six times, possibly resulting in a fatal kidney laceration, among other injuries, when the victim had already been beaten and was immobile, allows the inference that defendant inflicted excruciating pain for sheer cruelty, constituting torture. MCL 777.37(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." It can be inferred that defendant's kicking of the victim subjected him to extreme pain intended to produce suffering in light of the victim's many injuries and ultimate death, and that such conduct was inflicted for defendant's gratification. Therefore, the trial court did not err in assigning 50 points to OV 7.

OV 10 governs "exploitation of a vulnerable victim." MCL 777.40(1). A trial court may assign five points to OV 10 if a defendant (a) "exploited a victim by his . . . difference in size or strength, or both," or (b) "exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1)(c).[2] Accordingly, we must determine (1) whether the victim was vulnerable, and (2) whether defendant exploited the victim.

The statute defines vulnerability as a "readily apparent susceptibility . . . to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Courts consider a non-exhaustive list of factors to assess vulnerability, *People v Huston*, 489 Mich 451, 465-466; 802 NW2d 261 (2011), and one of the factors is whether the victim was intoxicated, *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008). Here, the victim was vulnerable because he was intoxicated. *Id*. The medical examiner testified that his blood alcohol measured .398, "approximately five times more than the legal limit" of .08. In light of this level of intoxication and the fact that defendant was drinking with the victim before he was killed, the victim's vulnerability was "readily apparent."

---

[1] The trial court explained that it also scored OV 7 because defendant "assisted in hiding the body." But such conduct does not support scoring OV 7. See *Hunt*, 290 Mich App at 326.

[2] Defendant's assertion that such a score requires preoffense conduct is incorrect. MCL 777.40(1)(a) and (3)(a) specifies that preoffense conduct is required to find predatory conduct needed to assign 15 points. But such conduct is not required to assign five points.

The statute defines "exploitation" as "manipulat[ing] a victim for selfish or unethical purposes." MCL 777.40(3)(b). MCL 777.40 does not define the term "manipulate." But one dictionary definition of the word "manipulate" is "to control or play upon by artful, unfair, or insidious means esp. to one's own advantage." *Merriam-Webster's Collegiate Dictionary* (2014). Here, defendant played upon the victim in an unfair manner to his own advantage for an unethical purpose when he kicked the victim who had already been hit over the head with multiple bottles, had fallen from a porch, had been kicked by Tulacz, and had stopped moving. Because defendant exploited a vulnerable victim who was intoxicated, the trial court did not err in assigning five points to OV 10.

OV 5 governs "psychological injury to a member of a victim's family." MCL 777.35(1). Assigning 15 points requires a finding that the victim's family suffered "[s]erious psychological injury requiring professional treatment." MCL 777.35(1)(a). The record contains no evidence of such an injury. Therefore, OV 5 was improperly scored.

OV 8 governs "victim asportation or captivity." MCL 777.38(1). Assigning 15 points requires a finding that the victim was either (a) "asported to another place of greater danger," (b) "asported . . . to a situation of greater danger," or (c) "held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Here, plaintiff argued that 15 points should be assigned because the victim was asported to a situation of greater danger when he was "le[ft] in between . . . houses facedown where he couldn't have received medical attention." "A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014). However, asportation cannot " 'be incidental to committing an underlying offense.' " *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), quoting *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). Rather, such asportation must facilitate the crime for which the defendant was convicted. See, e.g., *People v Steele*, 283 Mich App 472, 490-491; 769 NW2d 256 (2009) (defendant took victims to a trailer, a tree stand, and a dirt bike and committed criminal sexual conduct); *Chelmicki*, 305 Mich App at 60, 71 (defendant took the victim from a balcony to a basement and committed domestic assault and unlawful imprisonment). Plaintiff provides no caselaw supporting its argument that transportation of a victim to an area where they could not receive medical attention facilitates a 15-point score. Further, the record does not support plaintiff's claim. It appears that the victim was moved between houses near a walkway where a neighbor could see the body from three houses down the street. Therefore, others may have been able to see the victim to provide medical attention. And it is unclear whether medical attention would have been successful at or after the time that defendant moved the victim. No witness testified to the victim's time of death. Therefore, he could have passed away before defendant moved him. Thus, the trial court erred in assigning 15 points to OV 8 because defendant's asportation of the victim was incidental to his commission of second-degree murder.

When subtracting the 15 points incorrectly assigned to OV 5 and the 15 points incorrectly assigned to OV 8, defendant's total OV score reduces from 146 to 116. This reduction does not change defendant's minimum guidelines sentence range. MCL 777.16p; MCL 777.61. Therefore, "resentencing is not required" on this basis. See *Francisco*, 474 Mich at 89 n 8.

## B. USE OF JUDICIAL FACT-FINDING TO SCORE OVS

Next, defendant argues that the trial court violated his constitutional rights by using judicial fact-finding to score OVs 5, 7, 8, and 10, which increased his minimum guidelines sentence range. We agree.

Defendant failed to preserve this issue. We review unpreserved Sixth Amendment challenges to judicial fact-finding for plain error. *People v Lockridge*, 498 Mich 358, 364, 392; 870 NW2d 502 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are "constitutionally deficient" to "the extent [that they] *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." (Emphasis in original.) Such a scheme "violates the Sixth Amendment." *Id*. at 373. Instead, "[a]ny fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v United States*, ___ US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013); see also *Lockridge*, 498 Mich at 386. Accordingly, trial courts violate the Sixth Amendment when using judicial factual findings to increase a minimum guidelines sentence range. See, e.g., *People v Sardy*, 313 Mich App 679, 732-733; 884 NW2d 808 (2015).

If such a violation occurs, "the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 498 Mich at 397. This procedure is known as a *Crosby* remand, which permits " '*the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime,*' " here, *Lockridge* and its progeny, " '*and if so, to resentence.*' " *Id*. at 396, quoting *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), abrogated by *United States v Corsey*, 723 F3d 366 (CA 2, 2013) (emphasis in *Lockridge*). However, a defendant may reject resentencing by promptly notifying the trial court. *People v Stokes*, 312 Mich App 181, 201-202; 877 NW2d 752 (2015).

Defendant argued that the trial court incorrectly used judicial fact-finding to score OVs 5, 7, 8, and 10. In convicting defendant of second-degree murder, the jury found that "(1) a death, (2) [was] caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464. These jury findings do not overlap with the fact-findings required to score OVs 5, 7, 8, and 10, as outlined above.

If we subtract the 15 points for OV 5, 50 points for OV 7, 15 points for OV 8, and five points for OV 10 from defendant's total OV score of 146, defendant's total OV score is reduced to 61. This new OV score reduces defendant's minimum guidelines sentence range from 270 to 450 months in prison, or life in prison, to 225 to 375 months in prison, or life in prison. MCL

777.16p; MCL 777.61. Because defendant's minimum guidelines sentence range is altered, he is entitled to a *Crosby* remand. See *Sardy*, 313 Mich App at 732-733.

Remanded for a proceeding consistent with *Crosby*. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto