*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHANTAVIA CAROLYN-LALITA HAYDEN,

Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 365731
Macomb Circuit Court
LC No. 2021-000229-FC

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of second-degree murder, MCL 750.317, and second-degree child abuse, MCL 750.136b(3). The trial court sentenced defendant to concurrent prison terms of 330 to 600 months for the murder conviction, and 78 to 120 months for the child abuse conviction. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the starvation death of her seven-week-old son, who was pronounced dead upon arrival at Children's Hospital in Detroit in the early morning of October 11, 2020. At trial, the prosecutor argued that defendant knowingly created a very high risk of death or great bodily harm by failing to feed the infant for at least seven days. The attending pediatric trauma physician testified that the baby had died more than two hours before defendant brought him to the hospital, and was already in full rigor mortis upon arrival. The medical examiner explained that there was nothing in the child's colon, which demonstrated that he had his last meal at least seven days before his death, and that he had not had adequate nutrition for several weeks. She concluded that the cause of death was "starvation due to neglect" and the manner of death was homicide. The prosecution also presented evidence that defendant's inaction of failing to feed the child was not because she lacked the resources to do so, because defendant had been provided with more than sufficient food and financial resources through state agencies to care for the child.

The defense argued that defendant fed her child, there was some other cause for the child's death, and the argument that she did not feed the child "doesn't make sense." The defense

-1-

emphasized that defendant would not have contacted emergency medical services regarding the child having trouble digesting food and having trouble breathing on October 1 if she was not feeding him. The defense further emphasized that despite the medical's examiner's conclusion that the child had not been fed in at least seven days and that the process of starvation had begun before those seven days, no one who came into contact with the child ever noticed any signs of starvation or had concerns about his weight. Furthermore, defendant's three other children were healthy and well fed. The jury found defendant guilty as charged.

## II. JURY INSTRUCTIONS – INVOLUNTARY MANSLAUGHTER

Defendant first argues that the trial court erred by denying her request for an instruction on the lesser offense of involuntary manslaughter. We disagree.

Although questions of law pertaining to jury instructions are reviewed de novo, a trial court's decision whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). A court's failure to give a requested instruction warrants reversal "only where the offense was clearly supported by the evidence; an offense is clearly supported where there is substantial evidence to support it." *People v McMullan,* 488 Mich 922; 789 NW2d 857 (2010).

Involuntary manslaughter is a lesser offense of murder, distinguished by the element of malice.[1] *People v Mendoza*, 468 Mich 527, 533-534, 540-541; 664 NW2d 685 (2003). Consequently, if a defendant is charged with murder, an instruction on involuntary manslaughter must be given upon request if supported by a rational view of the evidence. *Id*. at 541. As applicable to this case, if a homicide "was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004). Thus, defendant would have been entitled to an involuntary manslaughter instruction if a rational view of the evidence supported a finding that the child's death was caused by an act of gross negligence or an intent to injure, and not malice.

Defendant argues that an involuntary manslaughter instruction should have been given because her "actions could have been interpreted by the jury as having been grossly negligent." There was no evidence, however, to support this theory. The defense theory was that defendant fed her child, and any argument that she failed to do so "doesn't make sense." As plaintiff aptly observes, the defense questioning of prosecution and defense witnesses was aimed at establishing that defendant did not starve her child, but regularly fed him, and that there was some other cause of his death. The defense emphasized that there were no signs of physical abuse, that defendant's other three children were well fed and healthy, and that, despite the medical examiner's opinion, no one who came into contact with the child ever noticed any signs of starvation or had concerns

---

[1] "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted).

about his weight. In sum, the defense never argued either that defendant had not fed her child or that her action of not feeding the child was the result of gross negligence. Considering all the evidence that was presented at trial, no rational juror could conclude that defendant's conduct of failing to feed her seven-week-old infant for at least seven days could be characterized as only an act of gross negligence, committed without malice. Consequently, defendant was not entitled to an instruction on involuntary manslaughter.

## III. JURY INSTRUCTIONS – VOLUNTARY MANSLAUGHTER

As defendant acknowledges, there was never a request to instruct the jury on voluntary manslaughter and no objection to the trial court's instructions as given. Indeed, after the trial court instructed the jury, the court asked the parties whether they were "satisfied with the jury instructions?" Defense counsel stated, "Judge, the defense is." By expressly approving the jury instructions, defendant waived appellate review of claim that the court erred by failing to instruct the jury on voluntary manslaughter. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Defendant's waiver extinguishes any error, leaving no error to review. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

## IV. OFFENSE VARIABLE 7

Defendant argues that she is entitled to be resentenced because the trial court erroneously scored offense variable (OV) 7 (aggravated physical abuse) of the sentencing guidelines. Again, we disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

MCL 777.37(1) requires an assessment of 50 points if a victim "was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Absent such conduct, the score will be zero. MCL 777.37(1)(b). Each of the four listed categories offers a distinct basis for a 50-point score. *Hardy*, 494 Mich at 440-442. In this case, the trial court assessed 50 points on the basis of excessive brutality. A victim is treated with excessive brutality when a defendant treats the victim with "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (citation omitted). The focus when determining whether points are appropriate under OV 7 is on the defendant's conduct and purpose, rather than the victim's experience. *People v Kegler*, 268 Mich App 187, 191-192; 706 NW2d 744 (2005). When scoring OV 7, sentencing courts may consider conduct that is inherent in the crime itself. *Hardy*, 494 Mich at 441-442.

We agree with the trial court that defendant's actions underlying her second-degree murder conviction are sufficient to justify a score of 50 points on the basis that the child was treated with excessive brutality. In its findings, the trial court aptly highlighted that there were "numerous other ways the defendant could have killed this child that would have been more humane," yet she

deprived him of more than 50 meals "and allowed him to slowly waste away until his body was eating away at his muscles in an attempt to survive." According to expert testimony, the child had not been provided any sustenance for at least seven days, had not had a full meal in 10 days, and that "[h]is body had no nutrients and for such a long period of time that he had digested all of his fat and was breaking down his muscle tissue." There was an abundance of evidence presented during trial regarding the condition of the child's body, including that he had "essentially skin on bone," "no fat," his eyes were "sunken in," and there was very little muscle left on the extremities. The medical examiner described this case as one of "the most graphic example of starvation" that she had seen in her 23 years of practice, and the officer in charge similarly described the child's deceased body as one of the most horrific things he had seen during his 22-year law enforcement career. In sum, a preponderance of the evidence supports the trial court's finding that defendant treated the victim with excessive brutality, thereby supporting a 50-point score for OV 7.

## V. OFFENSE VARIABLE 10

In her last claim, defendant challenges the 10-point score for OV 10 (exploitation of a vulnerable victim).[2] However, we need not determine whether there was sufficient evidence that defendant exploited her seven-week-old child's youth or other vulnerability because, regardless of whether OV 10 was properly scored, defendant would not be entitled to resentencing. The trial court scored the guidelines for defendant's conviction of second-degree murder, which is a Class M2 offense. MCL 777.16p. Defendant received a total OV score of 110 points, which combined with her 20 prior record variable points, placed her in the C-III cell of the Class M2 sentencing grid, for which the minimum sentence range is 225 to 375 months or life. MCL 777.61. The 10-point score for OV 10 does not affect defendant's placement in OV Level III (100+ points), and thus has no effect on her guidelines range for second-degree murder. Because the scoring of OV 10 does not affect defendant's sentencing guidelines range, she is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).[3]

Affirmed.

/s/ Brock A. Swartzle
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett

---

[2] A score of 10 points is appropriate if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

[3] Defendant has not asserted that her sentence is disproportionate and, had she done so, applying a presumption of proportionality, *People v Posey*, 512 Mich 317, 357; 1 NW3d 101 (2023), we would find that the sentence is proportionate to the seriousness of the matter and to defendant.