*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAWRENCE JAMES DAVIS,

        Defendant-Appellant.

UNPUBLISHED
August 15, 2024

No. 363805
Wayne Circuit Court
LC No. 19-006564-01-FC

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

PER CURIAM.

Defendant, Lawrence James Davis, appeals as of right his jury trial conviction of second-degree murder, MCL 750.317. Davis was sentenced to 37.5 to 60 years' imprisonment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the fatal beating of Tyler Wingate. On July 22, 2019, at about 1:30 a.m., Davis' vehicle collided with Wingate's in the roadway outside Pure Gas Station ("the gas station") in Detroit. After the crash, Brandon Blair, Wingate's friend and passenger in his vehicle at the time of the accident, observed Davis approach Wingate aggressively. Davis hit Wingate in the face with his fist, causing Wingate to fall down onto the sidewalk. Davis struck Wingate with his fist at least one more time causing Wingate to fall down and rendering him unconscious. An unidentified female who was a passenger in Davis' vehicle attempted to pull Davis away from the victim. About one minute and twenty-seven seconds after the second punch, Davis kicked a motionless Wingate in the head. The assault was fatal.

Davis was arrested and charged with open murder. At the close of the prosecution's case, Davis moved for a directed verdict arguing there was insufficient evidence of premeditation and intent to kill to support a first-degree murder conviction, or intent to kill to support a second-degree murder conviction. The trial court denied Davis' motion. The trial court instructed the jury on the charges of first-degree murder, second-degree murder, and voluntary manslaughter. The jury returned a guilty verdict of second-degree murder. Davis was sentenced at the top of his guidelines range, to a minimum of 37.5 years in prison. Davis now appeals.

## II.  ANALYSIS

### A.  SUFFICIENCY OF THE EVIDENCE

Davis argues insufficient evidence was presented to prove the malice element of second-degree murder beyond a reasonable doubt.  Davis contends the evidence presented showed he acted in the heat of passion, and the matter should be remanded for resentencing on the lesser charge.  We disagree.

"This Court reviews de novo [a] defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011) (citation omitted).  "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt."  *Id*. (citation omitted).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).  "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."  *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).  "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of the witnesses."  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) (citations omitted).

The elements of second-degree murder are (1) a death, (2) caused by an act of the accused, (3) with malice.[1]  *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998).  Specifically:

> Malice may be established in three ways: by showing (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  [*People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022) (citation omitted).]

Manslaughter is a "necessarily included lesser offense of murder."  *People v Mendoza*, 468 Mich 527, 544; 664 NW2d 685 (2003).  To be considered voluntary manslaughter, the accused "must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions."  *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023).  "The provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant."  *Id*. (citation omitted).  The element distinguishing voluntary manslaughter from murder is malice, " 'which in voluntary manslaughter is negated by the presence of provocation and heat of passion.' "  *Id*. at 489-490 (internal quotation marks and citation omitted).  "The determination of what is reasonable

---

[1] This Court recently held "without justification or excuse" is not an element of second-degree murder.  *People v Spears*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357848); slip op at 12.

provocation is a question of fact for the fact-finder." *People v Tierney*, 266 Mich App 687, 715; 703 NW2d 204 (2005) (quotation marks and citation omitted).

"Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Railer*, 288 Mich App 213, 216; 792 NW2d 776 (2010). This Court "must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id*. at 216-217 (citation omitted). See also US Const, Ams V, VI, and XIV; Const 1963, art 1, § 17 and 20. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400. (quotation marks and citation omitted). "[A] defendant's intent may be inferred from his acts." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011) (quotation marks and citation omitted).

Davis contends the prosecutor did not prove malice. Specifically, Davis contends malice was negated by the presence of adequate provocation and the heat of passion. As a result, Davis asserts he should be found guilty of voluntary manslaughter instead of second-degree murder.

We hold there was sufficient evidence for the jury to find Davis guilty of second-degree murder. On review, the only disputed element is malice. To begin, the jury was provided, as was this panel, a copy of the Pure Gas Station footage of this fatal assault. Admittedly, such footage is not always clear. This was. And from this video alone, a reasonable jury could find Davis acted with malice, or intent. The video supports that Davis began his beating of the victim by punching him. According to a bystander, after one of the punches, Davis stated: "You're lucky I don't kill you." Davis then kicked the victim in the head while he was lying unconscious and motionless on the ground. The video clearly shows Wingate was face down and unresponsive on the cement when Davis kicked him with such force that Wingate was fatally injured from the blunt force trauma to the head and sudden rotational force in his neck. Testimony from the medical examiner detailed that Wingate's brain was swollen and there was hemorrhaging in the brain and within the spinal cord down to the cervical spinal cord. The record evidence was sufficient for the jury to find Davis intended to cause the victim great bodily harm when he punched and kicked him or, at least, had wanton and willful disregard that the natural tendency of his punches and kick would cause death or great bodily harm. See *Gafken*, 510 Mich at 511 (defining malice).

Additionally, although the jury did not need to reach the question of whether Davis was guilty of voluntary manslaughter, the record evidence was sufficient for a jury to determine the events preceding the assault were not adequate provocation. See *Yeager*, 511 Mich at 489; *Tierney*, 266 Mich App at 715. A jury also, or alternatively, could have found Davis had the opportunity to control his passions. The passenger in Davis' car pulled him away from Wingate's unconscious body. About one minute and twenty-seven seconds elapsed between the second punch and the kick to his head. That time frame alone is not necessarily significant in-and-of-itself, but what Davis did during that time is. He walked away toward a Coney Island restaurant, returned to the gas station parking lot, and removed his shirt before again approaching a face-down, unconscious Wingate and kicking him in the head. The record evidence was sufficient for a jury to determine that on the basis of these actions, the lapse of time, albeit not extensive, was one during which Davis could control his passions. See *Yeager*, 511 Mich at 489.

Drawing all reasonable inferences and making credibility choices in support of the jury verdict, we conclude the evidence presented was sufficient to support Davis' conviction of second-degree murder. See *Nowack*, 462 Mich at 400. Davis' due-process rights were not violated, and his conviction of second-degree murder is affirmed.

## B. OFFENSE VARIABLE 7

Next, Davis argues the evidence presented at trial and sentencing did not justify the assessment of 50 points for excessive brutality for Offense Variable (OV) 7. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (citation omitted).

Davis contends OV 7 was scored incorrectly. Davis' total for all offense variables was 130 points, or Level III of the M2 sentencing grid. OV 7 can be scored at either 50 points or 0 points. If Davis were instead scored at zero points, his OV total would be below 100 points, changing the OV level from III to II, altering his guidelines range. If Davis can show OV 7 is misscored, he would be entitled to resentencing. *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006).

The statute codifying OV 7, MCL 777.37, states:

> (1) OV 7 is aggravated physical abuse. It is scored by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense …………………………………… 50 points
>
> (b) No victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense …………………………………… 0 points

"A trial court can properly assess 50 points under OV 7 if it finds a defendant's conduct falls under one of the four categories listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440.

> Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. [*Id.* at 442-443.]

"[E]xcessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012). "The focus of OV 7 is defendant's conduct and purpose with respect to aggravated physical abuse." *People v Kegler*, 268 Mich App 187, 191; 706 NW2d 744 (2005). Admittedly, with a crime like second-degree

murder where the elements themselves require some level of physical harm resulting in death, differentiating "excessive brutality" from "usual brutality" can be difficult and is itself a very fact-intensive process. When it decided to assess 50 points for excessive brutality, the trial court considered the evidence presented at trial, including the fact that Davis punched Wingate at least twice and kicked him in the head. The trial court also weighed heavily the severity of Wingate's injuries and the force required to cause them. The trial court stated:

> In this case, after the car accident caused by Mr. Davis, wherein no one was injured, Mr. Davis sucker punched Mr. Wingate with three strong hits to the face and then . . . football kick to the head. Mr. [Davis'] inexcusable assault on Mr. Wingate was so savage that there was bleeding on the brain that extended from the base of the brain all the way down to the C7 vertebrae. And just so that the record is clear we're talking from base of a brain all the way down to where, basically, the neck meets the spine and that's [a] lot of force and that's a lot of power directed at one of the most vulnerable areas of the human body.

We find no clear error in these facts the trial court found to support scoring OV 7 at 50 points. This is not, however, where the trial court concluded. The trial court went on:

> This Court cannot speculate as to Mr. [Davis'] purpose and motivation . . . but perhaps it can be partially defined by Mr. [Davis'] history of assaultive offenses and his apparent intrinsic rage. Mr. [Davis'] purpose, therefore, might just be that he lacks basic empathy and experiences some feeling of power in victimizing others.

While appellate defense counsel does provide this portion of the transcript in his pleading, he does not argue that this particular language constitutes a reliance on inaccurate information or information that is not supported by a preponderance of the evidence. We decline to make that argument on counsel's behalf now. We do note, though, for the benefit of the bench and bar, that the plain language of MCL 777.37 does not require the trial court to opine *why* an individual has acted in a manner that constitutes "aggravated physical abuse," and we caution the bench not to do so, particularly where the record has scant detail to support concepts like "intrinsic rage" and "some feeling of power in victimizing others." Additionally, we remind the bench and bar that "offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009); *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016) (holding that OV 7 is a *McGraw* variable and "the trial court here was only permitted to consider conduct that occurred during the criminal offense . . . for the purpose of scoring OV 7."). Therefore, in deciding whether to score OV 7 at 50 points or 0 points, it is contrary to the plain language of the statute and caselaw to consider one's criminal history or motivation as the trial court did here.

Notwithstanding these errors, the trial court's finding that Davis used excessive brutality was still supported by a preponderance of the evidence and the initial findings contained no clear

or obvious error.  This being the only issue raised with respect to Davis' 37.5-year minimum prison sentence, we affirm his sentence for second-degree murder.  *Hardy*, 494 Mich at 438.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Adrienne N. Young