*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 10, 2026
8:54 AM

Plaintiff-Appellee,

v

No. 373599
Calhoun Circuit Court
LC No. 2022-003169-FC

DELAINE CLAUDE LAMBERT,

Defendant-Appellant.

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), interference with electronic communications, MCL 750.540(5)(a), and four counts of resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to serve 76 to 120 months' imprisonment for AWIGBH and 365 days' imprisonment for interfering with electronic communications and each count of resisting-or-obstructing. Defendant challenges the sufficiency of the evidence to support his AWIGBH conviction and the scoring of Offense Variable (OV) 7 and OV 8 during his sentencing. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim in this case, Lewis Lambert, is defendant's father.[1] Lewis described himself as hard of hearing and as regularly communicating using American Sign Language (ASL).[2] He was also "pretty good at reading lips," but he had poor vision and had to be close to the speaker to read lips.

---

[1] This opinion refers to Lewis Lambert by his first name to avoid confusion with defendant, who shares the same last name.

[2] An ASL interpreter assisted Lewis during his testimony at defendant's trial.

-1-

On November 4, 2022, Lewis appeared at the Battle Creek Police Department (BCPD). BCPD officers immediately noticed that Lewis had severe injuries to his face, including swollen black eyes, a swollen and bloody lip, and blood on his hairline and on both ears. Lewis spoke with the officers and named defendant as his assailant. Officers called an ambulance, and Lewis was hospitalized for two days at the Bronson Battle Creek Hospital.

At trial, Lewis testified about events that occurred at his home on November 4, 2024. Lewis explained that defendant struggled with drinking and had agreed to attend an Alcoholics Anonymous program but never did. He also explained that defendant was not allowed at Lewis's home and that defendant was aware of that. On November 4, defendant was getting ready to take a trip to Kentucky. To help defendant out, Lewis agreed to give defendant $500, which was significant amount of money for Lewis at the time. After receiving the money, defendant left Lewis's home. Later that same day, Lewis was startled when defendant used a ladder to enter the home through a window. Lewis could not hear defendant enter but tried to get defendant to leave when he noticed him. Defendant was obviously drunk. Lewis told defendant that he needed to stop drinking, and defendant began arguing with Lewis by simultaneously speaking and signing in ASL.[3]

Defendant "grabbed" Lewis by the throat and began hitting and choking him. Lewis pleaded with defendant to stop, but defendant continued to punch and hit Lewis. Lewis testified that he "was trying to get him away, but it was really hard." Defendant choked Lewis several times, and Lewis struggled to breathe but did not lose consciousness. Lewis testified that he experienced pain during the assault and that his nose and head began bleeding. Lewis attempted to call 911 with a video phone that was connected to his television, but defendant and Lewis "had a tussle over the remote," and defendant prevented Lewis from calling 911. Defendant told him multiple times that "[i]t's your time to die," and he tried to throw him out of the window several times. Lewis testified that he was afraid for his life and thought that he "might die." He described the assault as "stop and go," explaining that "he hit me, and then he stopped. Then he hit me again, and then he choked me, and then he stopped. Then he hit me again." Eventually, defendant walked away and sat on the couch. Lewis gave defendant medication[4] to help calm him down. Lewis waited until defendant "got quiet" and "passed out a little bit," then he left the home and took the bus to the BCPD to make a report.

Doctor David Bartholomew treated Lewis on November 4, 2022, and he testified at trial as an expert in general and trauma surgery. Dr. Bartholomew recalled that Lewis was taking Plavix, a common blood-thinning medication. He testified that Lewis had "traumatic bruising" that was "unlikely" to be from a spontaneous bleeding or a single bump into a wall. Dr. Bartholomew stated that Lewis underwent a CT scan that showed "an area of bleeding inside the skull." He opined that Lewis's injuries were consistent with being assaulted or having a traumatic experience.

_____

[3] Lewis was not reading defendant's lips at this time. He testified that defendant's signing was "all over the place," but he could still understand what defendant was saying.

[4] The medication was prescribed to Lewis, not defendant. There was no testimony about whether defendant consented to taking the medication.

Defendant was arrested and charged with assault with intent to murder (AWIM), first-degree home invasion, interfering with electronic communications, and four counts of resisting-or-obstructing. The trial court granted defendant's request for jury instructions on AWIGBH and aggravated assault as lesser-included offenses of AWIM. The jury found defendant guilty of AWIGBH, interfering with electronic communications, and all counts of resisting-or-obstructing.[5] It found him not guilty of first-degree home invasion. The trial court sentenced him as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that defendant was guilty of AWIGBH. We disagree.

## A. STANDARD OF REVIEW

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id*.

## B. ANALYSIS

A person is guilty of AWIGBH if he "[a]ssaults another person with intent to do great bodily harm, less than the crime of murder." MCL 750.84(1)(a).[6] To sustain a conviction of AWIGBH, the prosecution was required to prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks, citation, and emphasis omitted). Defendant concedes that there was sufficient evidence of an assault, so he only challenges the second element, arguing that there was insufficient evidence of the requisite intent. "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id*. at 629. A defendant's intent to cause serious injury of an aggravated nature can be inferred from his actions, including "the making of threats." *Id*. "Although actual injury to the

---

[5] The resisting-or-obstructing convictions arose out of defendant's conduct during his arrest, which is not relevant to this appeal.

[6] AWIGBH may also be based on an assault "by strangulation or suffocation." MCL 750.84(1)(b). Although this case involved testimony about choking, the trial court did not include that language in its final jury instructions. Therefore, we do not consider whether there was sufficient evidence to convict defendant on the basis of subsection (1)(b).

victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent." *Id*. (citation omitted).

Taken in the light most favorable to the prosecution, there was sufficient evidence that defendant intended to inflict great bodily harm less than murder. See *Brown*, 267 Mich App at 147. Although Lewis did not believe that he lost consciousness during the altercation with defendant, defendant "hit" Lewis, "grabbed" Lewis by the throat, and tried to "throw [him] out the window" several times. Lewis pleaded with an intoxicated defendant to "stop," but defendant "refused to" leave the apartment and continued to hit and punch Lewis with his hands. Defendant repeatedly told Lewis that "[i]t's time for you to die," and he choked Lewis with such force that Lewis had a "hard time breathing." Even if defendant did not intend the "time for you to die" comments literally, defendant's repeated hitting, punching, choking, and attempts to throw Lewis out of the window satisfied the "minimal circumstantial evidence" required to prove defendant's intent to inflict great bodily harm less than murder. *Stevens*, 306 Mich App at 629.

Viewing these facts in the light most favorable to the prosecution, a reasonable fact-finder could conclude that defendant was guilty of AWIGBH. See *Harris*, 495 Mich at 126. We therefore affirm defendant's AWIGBH conviction.

## III. OFFENSE VARIABLES

Defendant argues that even if we affirm the AWIGBH conviction, we should remand for resentencing because the trial court erroneously scored 50 points for OV 7 and 15 points for OV 8. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve a challenge to the scoring of offense variables, the challenge must be raised at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court. *People v Hershey*, 303 Mich App 330, 353; 844 NW2d 127 (2013), citing MCL 769.34(10). Defendant preserved his challenge to OV 7 by raising the issue at the sentencing hearing. Defendant's argument about OV 8, however, is not preserved because he raised it for the first time in his brief on appeal.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citations omitted). The application of the facts to the scoring conditions "is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted). However, unpreserved challenges are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error rule, the defendant "must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). But "reversal is only warranted when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and citation omitted; alterations in original).

## B. OV 7

When scoring the OVs to determine a defendant's sentencing guidelines, the trial court must assign 50 points to OV 7 when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "A trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *People v Hardy*, 494 Mich 430, 439-440; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).[7] "OV 7 is designed to respond to particularly heinous instances in which the criminal acted to increase [a victim's] fear by a substantial or considerable amount." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted; alteration in original). In determining the proper assessment of points for OV 7, "we must consider whether the defendant engaged in conduct beyond the minimum required to commit the offense and, if so, whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Rodriguez*, 327 Mich App at 579 (quotation marks and citation omitted). The focus is on the defendant's conduct and intent rather than the victim's experience. *People v Kegler*, 268 Mich App 187, 191-192; 706 NW2d 744 (2005).

In this case, the record shows by a preponderance of the evidence that defendant engaged in conduct—beyond the minimum necessary to commit the offense—to warrant an assessment of 50 points. We begin by emphasizing that no physical injury is required to commit the offense of AWIGBH. *Stevens*, 306 Mich App at 629. Lewis sustained injuries from the assault that required him to be hospitalized for two days. Even if those injuries were exacerbated by Lewis's blood-thinning medication, the evidence that defendant caused the injuries means that his conduct went beyond the minimum necessary to commit AWIGBH. Lewis testified that the assault was "stop and go," indicating that it lasted for a prolonged period of time, during which defendant prevented Lewis from calling for help. Defendant also repeatedly told Lewis that it was "time for [him] to die." Lewis testified that he was not reading defendant's lips at the time, so if defendant communicated those threats in ASL, then he would have had to stop hitting Lewis long enough to sign the threats, which would indicate that the threats were not just emotional outbursts during the assault. Regardless, they were specifically intended to threaten Lewis beyond the physical assault itself. Defendant's actions demonstrate that he intended to substantially increase Lewis's fear and anxiety. See *People v Lydic*, 335 Mich App 486, 499; 967 NW2d 847 (2021) (holding that "gratuitously and repeatedly telling [the victim] during the brutal assault that she was about to die" was "similarly egregious conduct to sadism that substantially increased [the victim]'s fear and anxiety"). Taken as a whole, the preponderance of the evidence supported the inference that

---

[7] *Rodriguez*, 327 Mich App at 579 n 3, noted that *Hardy* interpreted an older version of MCL 777.37(1)(a) that did not include the "similarly egregious" phrase, so the amendment of the statute superseded the statement in *Hardy*, 494 Mich at 443, that "a defendant's conduct does not have to be 'similarly egregious' to 'sadism, torture, or excessive brutality' for OV 7 to be scored at 50 points . . . ." *Hardy* otherwise remains good law. See *Rodriguez*, 327 Mich App at 579 (relying heavily on *Hardy*'s interpretation of the statute).

defendant treated Lewis with excessive brutality or similarly egregious conduct. Therefore, the trial court did not clearly err by assessing 50 points for OV 7.

## C. OV 8

The trial court must assign 15 points to OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). The "asportation" element of OV 8 is satisfied "[i]f a victim is carried away or removed to another place of greater danger or to a situation of greater danger," even if the movement is only incidental to the offense. *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017) (quotation marks and citation omitted). "[A] victim is held captive under OV 8 when the defendant exerts either physical restraint or psychological influence over the victim." *People v Allen*, 331 Mich App 587, 599; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021).

In this case, a preponderance of the evidence supports the conclusion, for purposes of scoring OV 8, that defendant held Lewis captive. Lewis testified that defendant grabbed him by the throat and repeatedly tried to throw him out the window, and he was unable to get away from defendant. The assault was "stop and go" for a prolonged period, and defendant "took the phone" to prevent Lewis from calling 911. In order to leave the home and seek help, Lewis had to give defendant his own medication and wait until defendant was "passed out a little" on the couch. Lewis was not "carried away or removed to another place of greater danger," *Barrera*, 500 Mich at 21, but clearly "defendant exert[ed] either physical restraint or psychological influence over the victim," *Allen*, 331 Mich App at 599. Therefore, the trial court did not plainly err when it assessed 15 points for OV 8, and defendant is not entitled to resentencing.[8]

## IV. CONCLUSION

There was sufficient evidence presented for a rational trier of fact to find beyond a reasonable doubt that defendant was guilty of AWIGBH, and the trial court did not err by assessing 50 points for OV 7 and 15 points for OV 8.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[8] In any event, subtracting 15 points from OV 8 would not change defendant's OV level or sentencing guidelines. Even if the trial court had erred when scoring OV 8, defendant would not be entitled to resentencing because the error would not have affected his substantial rights. See *Allen*, 331 Mich App at 601 (holding that resentencing was only required if the points assessed for OV 8 affected the minimum sentence range).